IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number: 10-cv-01103-WYD-CBS

VESCENT, INC.,

    Plaintiff,

v.

PROSUN INTERNATIONAL, LLC,

    Defendant.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY PENDING ARBITRATION**

Plaintiff Vescent, Inc. ("Vescent"), by and through its undersigned counsel, hereby submits its Response in Opposition to Plaintiff's Motion to Stay Pending Arbitration ("Motion to Stay"; Docket No. 12), and in support thereof states as follows.

**I.  INTRODUCTION**

Defendant Prosun International, LLC ("Prosun") files its Motion to Stay and Compel Arbitration based on an arbitration "clause" that does not exist, and even if it did, would have no application to the claims asserted by Vescent in this litigation. That the Motion was initiated with such questionable bases over a month *after* Prosun Answered the Complaint is indicia of Prosun's real intention here—delay.

As a start-up and new entrant in the massage and wellness industry, Vescent invested thousands of hours and millions of dollars developing the technology behind its unique DRYWAVE™ therapy device primarily marketed under the brand name SolaJet™. Complaint, at ¶ 1. In early 2009 Prosun became interested in partnering in some fashion with Vescent, and

1

thus, the parties entered into a Confidentiality Agreement in May 2009 so that Prosun could learn more about Vescent's technology and explore a business relationship. Complaint, at ¶¶ 1, 18. After the entry of this Agreement, Vescent disclosed to Prosun virtually all of its highly confidential business and technical knowledge and information concerning the manufacture and sale of its products. *Id.*

After Prosun reviewed and digested this highly confidential information, and saw the possiblity of a lucrative partnership with Vescent, the parties contemplated entering into a license agreement for Vescent's intellectual property and trade secrets protecting its products and information. *Id.* at ¶¶ 1, 19. In consideration of the execution of a possible license agreement, in June 2009, the parties drafted a Letter of Mutual Intent ("LOI") to provide a basic structure and framework that would hopefully form the basis for a final license agreement. Complaint, at ¶ 20.

Included in this LOI were responsibilities, references, categories and terms that the parties proposed to include in a final agreement, which was intended to be drafted over the course of the next several months. Complaint, at ¶ 23. Indeed, the LOI language specifically utilizies the phrase "shall include" to indicate what that the terms are future proposals not present conditions. In this vein, the LOI includes a solitary *mention* of arbitration as a clause that the parties agreed *would* be included in a final license agreement. There was, however, no arbitration *clause* in the LOI.

In November 2009, the LOI was terminated before the parties entered a definitive agreement. Complaint, at ¶ 29. Accordingly, none of the terms that the parties agreed "shall" be included as part of a final definitive agreement were drafted and made operative with respect to the parties' relationship. Thus, no arbitration clause came into existence, and no arbitration

2

clause exists now that would govern this action.  Nevertheless after the scheduling conference and Scheduling Order have been entered, Prosun attempts to mischaracterize the solitary *mention* of arbitration contained in the LOI as an agreement the arbitrate the claims alleged in this lawsuit—claims that do not arise out of or depend on the LOI.  This assertion has no merit in fact or law.

Next, even if this Court were to somehow construe the *mention* of arbitration in the LOI to be a valid and binding arbitration clause, which it should not, Vescent's claims against Prosun in this dispute would not be subject to arbitration.  Vescent's claims arise out Prosun's wrongful conduct following the termination of the parties' relationship and, particularly, Prosun's blatant use of Vescent's intellectual property and confidential information in violation of the May 2009 *Confidentiality Agreement* executed between the partes– an independent agreement between the parties which, notably, does *not* contain any mention of arbitration.  Vescent's other claims (unjust enrichment, deceptive trade practices, unfair competition, and patent and trademark infringement) arise out of *independent* duties, not duties under the LOI.[1]

Accordingly, Prosun's Motion to Stay should be denied because no agreement to arbitrate exists, and even if it did, there was no agreement to arbitrate the claims alleged here.

## II.   BRIEF FACTUAL BACKGROUND

In early 2009, a third party known to both parties contacted Prosun about potentially partnering with Vescent for the sale, distribution, and/or manufacture of Vescent's unique DRYWAVE™ therapy device marketed under the brand name SolaJet™.  Complaint, at ¶ 16.

---

[1] Vescent's breach of contract claim also incorporates a breach of the LOI as non-use of confidential know how was also part of that Letter.  However, the entirety of the claim does not copend on that breach as Prosun is also in breach of the Confidentiality Agreement.

3

The parties discussed a potential arrangement allowing Prosun to act as a supplier and representative in connection with Vescent's products. *Id.* While exploring this potential relationship, and in recognition of the value of Vescent's confidential and proprietary business and technical information the parties executed a Confidential Disclosure Agreement ("Confidentiality Agreement" or "CDA") on May 22, 2009. Complaint, at ¶¶ 17-18. Pursuant to the terms of the Confidentiality Agreement, Prosun expressly agreed that it would not use or disclose any Vescent "Confidential Information" except for the express purpose of discussing a potential arrangement between the parties. *See* Declaration of Todd Howe ("Howe Decl."), at ¶ 5, filed as an electronic attachment hereto, and Confidential Disclosure Agreement, attached as Exhibit 1 to Howe Decl.[2]

Following the execution of the CDA, the parties continued exploring the joint venture. Complaint, at ¶ 23; Howe Decl. at ¶ 6. In the course of Vescent answering Prosun's questions about the marketing, manufacture, and sale of the Vescent products, Vescent, under the Confidentiality Agreement provided Prosun highly confidential and proprietary information about its business and products as well as granting Prosun access to its valuable intellectual property portfolio. *Id.* at ¶ 24.

Thereafter, Prosun and Vescent were sufficiently intrigued by the opportunity presented by a joint venture and discussed entering into a formal license agreement to work towards a joint product. *Id.* at ¶ 25; Howe Decl. at ¶ 6. In contemplation of the proposed license agreement, the parties drafted a Letter of Mutual Intent to provide a basic framework for what terms the parties'

---

[2] Pursuant to the CDA, "Confidential Information" includes, specifically, "all scientific, technical, financial, marketing and business information" of Vescent. Accordingly, Prosun expressly agreed not to use any "scientific, technical, financial, marketing and business information" of Vescent outside of the parties' relationship.

intended to eventually become a formal agreement.  Howe Decl. at ¶ 7 and the June 17, 2009 LOI, Exhibit 2 to the Howe Decl.  The LOI was intended to provide a framework for the basic terms and references the parties intended to include in any final license agreement.  Complaint, at ¶¶ 21-23.  Included in this LOI, was the following entry:

| Arbitration | American Arbitration Association in Denver, Colorado |

Exhibit 1 to Howe Decl. at page 4.  This entry was part of the LOI because the parties intended to include an arbitration clause *in the final agreement*.  Howe Decl. at ¶ 8.  For several months following the execution of the LOI, the parties worked together to determine if the LOI should be converted into a final definitive agreement.  Complaint, at ¶¶ 25-27.  During that time, and in accordance with the CDA, Vescent supplied additional Confidential Information and disclosed Vescent Intellectual Property to Prosun, relying on the obligations Prosun had agreed to under the CDA.  *Id.* at ¶ 24.  This Confidential Information included among other things, manufacturing knowledge, technical information, bill of materials, specific inventory pricing and parts selection, and component part supplier contact information.  *Id.*  None of this information would have been supplied but for the protections provided in the CDA and the fact that Prosun expressly agreed that the information would only be used in furtherance of the parties' potential relationship.  *Id.*

After a few months, the relationship between the parties deteriorated and Vescent determined that a final definitive agreement with Prosun could not be consummated.  Howe Decl. at ¶ 9.  On November 18, 2009, Vescent officially terminated the LOI and the relationship between the parties.  *Id.* at ¶ 10; Complaint at ¶ 29.  Thus, no formal license agreement was ever entered into between the parties.  Howe Decl. at ¶ 11.

However, notwithstanding Prosun's continuing obligation of confidentiality pursuant to the Confidentiality Agreement, and Prosun's common and statutory law duties not to improperly use or disseminate Vescent proprietary information or infringe upon Vescent's intellectual property rights, Prosun continued (and continues to this day) to utilize Vescent's intellectual property and the confidential and trade secret information. Complaint, at ¶¶ 30-37. Specifically, Prosun is selling a DRYWAVE™ massage therapy bed that incorporates significant amounts of Vescent's know how, including its patented technology, and was built based on confidential information obtained from Vescent under the confidentiality agreement and infringes upon Vescent intellectual property without a license. *Id.* Thus, not only is Prosun infringing Vescent's patents and trademarks to offer its Waterwave™ product, but it is breaching the very Confidentiality Agreement it entered into with Vescent by using the technical know-how supplied to it by Vescent. *Id.*

### III.  ARGUMENT

#### A.  THE PARTIES DID NOT AGREE TO ARBITRATION

A court cannot force a party to arbitrate an agreement he has not expressly agreed to submit to arbitration. *AT & T Techs, Inc. v. Comms. of America,* 475 U.S. 643, 648 (1986). (quoting *Steelworkers v. Warrior & Gulf Nav. Co.* 363 U.S. 574, 582 (1960)) ("[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *see also Cummings v Fedex Ground Package Sys., Inc.,* 404 F.3d 1258, 1262 (10th Cir.2005). Accordingly, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties *agreed* to arbitrate that dispute." *Alcarez v. Avent, Inc.*, 933 F.Supp. 1025, 1027 (D.N.M. 1996) (emphasis in original) (quoting *Mitsubishi Motors*

*Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985)). Notwithstanding the policy favoring arbitration, arbitration is a matter of contract, and, as with any other contract, the intentions of the parties' controls. *Id*. And, a "court may compel arbitration of a dispute…only when satisfied that the making of the agreement to arbitrate is not an issue." *Spahr v. Secco,* 330 F.3d 1266, 1269 (10th Cir.2003).

Finally, "judges in this district have crafted a sensible approach to disputes over whether the parties have agreed to arbitrate, applying 'a standard similar to that governing motions for summary judgment.'" *Axis Venture Group, LLC v. 1111 Tower, LLC,* Civil No. 09-cv-01636-PAB-KMT, 2010 WL 1278306 at * 3 (D.Colo.Mar. 30, 2010) (Brimmer, J) (*quoting Stein v. Burt-Kuni One, LLC,* 396 F.Supp.2d 1211, 1213 (D.Colo.2005)); *see also Ernest v. Lockheed Martin Corp.*, No. 07-cv-02038, 2008 WL 2958964, at *3 (D.Colo. July 29, 2008) (Daniel, J); *Cornell v. Harmony Homes, Inc.,* No. 06-cv00323, 2007 WL 38132, at *3 (D.Colo. Jan.4, 2007); *see also In re Universal Service Fund Telephone Billing Practices Litig.,* 300 F.Supp.2d 1107, 1116 (D.Kan.2003) ("The Courts of Appeals have uniformly held that '[i]n the context of motions to compel arbitration brought under the Federal Arbitration Act ... courts apply a standard similar to that applicable to a motion for summary judgment.' "). Under this approach, courts require defendants to bear the initial burden of presenting evidence sufficient to demonstrate that an enforceable arbitration agreement exists. *Stein,* 396 F.Supp.2d at 1212. If they meet that burden, the burden shifts to the plaintiff, which must show that there is a "genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed.R .Civ.P. 56." *Stein*, 396 F.Supp.2d at 1213.

Here, the only *mention* of arbitration is in the LOI. That document simply covers just what it is titled, *intentions*. In other words, arbitration is mentioned in a document that delineates the terms to be included *if* the parties reach a future agreement. But, no agreement was reached. And thus, an arbitration clause never became part of any final agreement and no arbitration clause was ever agreed to by the parties. Contrary to Prosun's wishful interpretation, the mention of arbitration did not mean that the parties would agree to arbitrate any and all disputes that may arise between the parties, but, as stated, merely signified that the parties desired to have an arbitration a clause of some nature included in any final agreement. In other words, Prosun has not met their burden to show that the parties agreed to arbitrate.

Moreover, the primary agreement governing the parties' relationship, the one that still applies today and under which some of Vescent's claims arise—the Confidentiality Agreement—contains no arbitration clause. This agreement does not show that parties agreed to arbitrate disputes concerning the disclosure of confidential information or other possible claims or the parties behavior under the CDA. "It is well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Brotherhood of Teamsters,* 130 S.Ct. 2847, 2855-56 (2010). And, "when deciding whether the parties agreed to arbitrate a certain matter…courts generally…should apply ordinary principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

In Colorado, a valid contract requires the parties to agree to sufficiently definite terms such that a "meeting of the minds" occurs as to the contractual agreement. *Winston Fin. Group, Inc. v. Fults Mgm't, Inc.*, 872 P.2d 1356, 1358 (Colo. App. 1994) (quoting *Schmidt v.*

*Frankewich,* 819 P.2d 1074 (Colo.App.1991)("if parties fail to agree to sufficiently definite terms, there is no meeting of the minds and no valid contract exists."). Further, where the terms of a contract are too uncertain to gather what the parties intended by it, the court cannot enforce the contract. *Newton Oil Co. v. Bockhold*, 176 P.2d 904, 908 (Colo. 1947).

The reference to arbitration in this case is a classic example of a failure of the meeting of the minds and, as a result, no valid agreement to arbitrate. This was a letter of intent—an intention to enter into a future agreement, one that would contain some form of arbitration clause once entered. There is no indication from the face of the letter of intent, nor facts in Prosun's Motion to Stay, that even remotely show a meeting of the minds to arbitrate current disputes—especially those disputes having no relation to the Letter of Intent. This was intentional, because the parties did not intend to arbitrate current disputes, but rather to agree *in the future* to arbitrate *future disputes* when or if they agreed to a final license agreement. Because no final license agreement was entered, there was no opportunity for the parties to create a meeting of the minds on an arbitration clause, and thus no arbitration clause now exists.

Further support for the notion that there is no agreement to arbitrate can be seen from the language of the LOI itself. It is clear from the structure of the LOI as well as specific references in other sections of the LOI that the inclusion of particular terms and references was solely for the purpose of agreeing to the terms and/or sections that would be included, in sufficient detail, in any future final agreement.

Examples of this prospective intent is found in the "termination" and "term" sections, which appear as follows:

| Termination clauses | 1. *To be determined in the final agreement* but *shall* include a provision for Prosun to have certain continuing rights if termination |

|  | is made by Vescent. |
|  | 2.  Change of ownership provisions will be part of the final agreement including the first rights of negotiations with other parties. |

| Term | The term of the license agreement *shall be* five years, with 2-five year renvewal periods by mutual consent. |

*See* Exhibit 1 to Howe Declaration at pages 3,6.  Indeed, many other provisions of the LOI contain the language "shall" *not* "will" including both parties' obligations under the Letter of Intent.  In other words, *if* the parties come to an agreement, the above, and others, are the terms which *shall* apply.  Similarly, a provision for arbitration shall be included *if* the parties reach a final agreement, which they did not.  This is in stark contrast to, for example, the confidentiality provision of the LOI which states in the affirmative, "all terms of this agreement and all companies confidential information *are* to remain confindential at all times."  *Id.* at p. 4.  (emphasis added).

**B.     EVEN IF THE PARTIES AGREED TO ARBITRATION, WHICH THEY DID NOT, THE PURPORTED ARBITRATION CLAUSE DOES NOT REACH THE CLAIMS ASSERTED IN THIS LITIGATION**

"To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry." *Cummings,* 404 F.3d at 1261; *see also Western Stone & Metal Corp. v. Riggs,* 2006 WL 6356808 at *1-2 (D.Colo.Feb. 2, 2006) (Daniel, J.).

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow.  Next if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause.  *Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview.*  Where the arbitration clause is broad, there arises a

> presumption or arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Id.* (emphasis in original; internal citations and quotations omitted). The Tenth Circuit has found that the typical type of broad provision is one that explicitly "refers all disputes *arising out of* a contract to arbitration." *Id.* (Emphasis added.) And, in determining whether a claim is arbitrable, the court must examine the factual underpinnings of the complaint rather than merely considering the labels attached to each of the causes of action it contains. *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.,* 567 F.3d 1191, 1197 (10th Cir.2009).

In this case, it is nearly impossible to analyze the arbitration "clause" because there is no clause. What exists is a single statement: "Arbitration: American Arbitration Association in Denver, Colorado." The only thing that can be gleamed from this statement are: (1) who an arbitration would be held in front of, and (2) where geographically it would be held. There is no indication of whether arbitration would broadly include all disputes arising from the relationship or narrowly for only breaches of the final definitive agreement and/or specific claims. It also does not deal with injunctive relief. It can thus not apply here where the facts alleged, and the claims asserted in the Complaint, do not arise out of or relate, or depend on the Letter of Intent.

The claims alleged are borne first out of the Confidentiality Agreement that protects against the disclosure and use of Vescent confidential and proprietary information, and second out of common and statutory law protecting Vescent's intellectual property and the public interest. Specifically, Vescent alleges that Prosun took Vescent's confidential and proprietary information, received as a result of the Confidentiality Agreement, and after the relationship

11

between the parties was terminated, Prosun is still using that information for its pecuniary gain. And second, in that endeavor, Prosun is also infringing upon Vescent's Federal patents and trademarks, and violating Colorado common law. None of these claims depend upon or relate to the LOI. Even a most favorable reading of the arbitration "clause" limits the claims subject to arbitration to those disputes regarding *terms* of the LOI, not to any dispute arising out of the parties' overall relationship or Prosun's outer-contractual legal duties. Although the LOI is part of Vescent's breach of contract claim against Prosun, the claims relating to the LOI do not concern interpretation of any of the LOI's terms, but rather merely relate to Prosun's confidentiality and nondisclosure obligations to Vescent—duties already arising out of the Confidentiality Agreement and common law. Thus, even if the LOI did not exist, this lawsuit would still have been initiated and liability would still lie.

Finally, the Confidentiality Agreement does not contain an arbitration clause, nor any reference to arbitration. This is because the parties' neither contemplated nor agreed to submit pre-definitive agreement disputes to arbitration.

## IV.  CONCLUSION

Compelling the parties to arbitrate a dispute is only appropriate where 1) there is an enforceable agreement to arbitrate, and 2) the disputes are within the scope of that agreement. Prosun cannot meet either threshold here and its Motion to Stay Pending Arbitration should be denied in its entirety.

Respectfully submitted this 20th day of August, 2010.

        s/ Evan M. Rothstein
        Gregory S. Tamkin
        Evan M. Rothstein
        Jennifer N. Lippman
        DORSEY & WHITNEY LLP
        370 17th Street, Suite 4700
        Denver, CO 80202-5647
        Telephone: (303) 629-3400
        E-mail: tamkin.greg@dorsey.com
        E-mail: rothstein.evan@dorsey.com
        E-mail: lippman.jennifer@dorsey.com
        **ATTORNEYS FOR PLAINTIFF VESCENT, INC.**

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on August 20, 2010, I caused the foregoing document, titled PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING ARBITRATION, to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email address:

blieb@sheridanross.com
Benjamin B. Lieb
Sheridan Ross P.C.
1560 Broadway, Suite 1200
Denver, CO 80202-5141

        s/ Evan M. Rothstein
        Evan M. Rothstein
        DORSEY & WHITNEY LLP
        Attorneys for Plaintiff
        370 17th Street, Suite 4700
        Denver, CO 80202-5647
        Telephone: 303.629.3400
        E-mail: rothstein.evan@dorsey.com