IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No: 10-cv-01103-WYD-CVS

VESCENT, INC.,

    Plaintiff,

v.

PROSUN INTERNATIONAL, LLC,

    Defendant.

_____

**ORDER**
_____

THIS MATTER is before the Court on Defendant's Motion to Stay Pending Arbitration, filed July 30, 2010.  Defendant requests a stay in the present action pursuant to the Federal Arbitration Act.  Plaintiff filed a response on August 20, 2010, and Defendant filed a reply on September 3, 2010.

I.    <u>FACTUAL BACKGROUND</u>

Plaintiff's Complaint, filed on May 12, 2010, asserts the following claims against Defendant Prosun International, LLC:  (1) Breach of Contract, (2) Misappropriation of Business Value, (3) Misappropriation of Trade Secrets, (4) Patent Infringement, (5) Trademark Infringement, (6) Unfair Competition, (7) Unjust Enrichment, and (8) Deceptive Trade Practices.

At issue in the present Motion is the arbitration provision of a Letter of Mutual Intent ["LOI", ECF No.14-3] signed by both parties on June 17, 2009.  Defendant asserts that all of the Plaintiff's claims are subject to that arbitration provision or are closely

related to claims that are subject to that provision.  Defendant further asserts that Plaintiff's assertion of a claim for breach of the LOI as well as the parties' course of performance confirms that the LOI and its arbitration provision are enforceable. Accordingly, Defendant seeks a stay or administrative closure of the case pending arbitration.  Plaintiff argues in response that there is no enforceable arbitration clause and no agreement to arbitrate or, alternatively, that the disputes at issue are outside the scope of the arbitration agreement.

II.     ANALYSIS

   A.     Standard of Review

The Federal Arbitration Act ["FAA"] requires courts to stay actions involving matters referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.  The Act further requires courts to compel arbitration in those cases. *Id.*, § 4.

With regard to whether a matter should be referred to arbitration, the Supreme Court has held, "Although the Court has also long recognized and enforced a liberal federal policy favoring arbitration agreements, it has made clear that there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration. . . is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S.

79, 83 (2002) (internal quotations and citations omitted). "Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Id.* at 84 (quotations omitted); *see also Axis Venture Group, LLC v. 1111 Tower, LLC,* No. 09-cv-01636-PAB- KMT, 2010 WL 1278306 at *2 (D. Colo. 2010) (quotation and internal citation omitted) ("Because defendants have not argued that there is anything 'in the contract that demonstrates the parties' intent to submit to an arbitrator the threshold question of whether an agreement to arbitrate exists . . ., I must resolve the initial question of arbitrability.").

My determination of whether the arbitration provision is valid is separate from the determination of whether the contract as a whole is valid. The Supreme Court has stated on this issue:

> First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts.

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006). The *Buckeye* Court reiterated that "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.* at 449. Thus, I look only at whether the arbitration clause at issue is enforceable, rather than determining the enforceability of the entire agreement.

The threshold issue I must address is whether an agreement to arbitrate exists. *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir.1997). "The existence of an agreement to arbitrate 'is simply a matter of contract between the parties; [arbitration] is a

way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration.'" *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-45 (1995)).  Defendant bears the burden of presenting evidence sufficient to demonstrate that an enforceable arbitration agreement exists.  *Axis Venture Group*, 2010 WL 1278306 at *3.

"When deciding whether the parties agreed to arbitrate a certain matter. . ., courts generally. . . should apply state-law principles that govern the formation of contracts." *Kaplan*, 514 U.S. at 944; *see also Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003) (Colorado applies principles governing contract formation to determine whether parties have agreed to submit a claim to arbitration).  Under Colorado State law, an enforceable contract requires mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration.  *Denver Truck Exchange v. Perryman*, 307 P.2d 805, 810 (1957), *see also Sumerel v. Goodyear Tire & Rubber Co.*, 232 P.3d 128,133 (Colo. Ct. App. 2009) ("A contract is formed when one party makes an offer and the other accepts it, and the agreement is supported by consideration.").

Thus, in determining whether or not to compel arbitration in the present action, the determination will rest first on whether the arbitration provision at issue satisfies the requirements needed to form a valid contract and if it does, whether the disputes are within the scope of that agreement.

      B.      <u>Analysis of the Validity of the Arbitration Provision as a Valid Contract</u>

In this case, Defendant relies for its argument that there is an enforceable agreement on the reference to arbitration in the LOI dated June 17, 2009 and signed by both parties [ECF No. 14-3].  The applicable lines read as follows;

   <u>Governing Law</u>  |  <u>Colorado</u>

   Arbitration    |  American Arbitration Association in Denver, Colorado.

(LOI at 4, ECF No. 14-3).  No other evidence is presented in support of this agreement.

  As referenced above, Colorado law requires mutual assent.  "Agreement to essential contractual terms is evidenced by the parties' manifestations of mutual assent." *Schmidt v. Frankewich*, 819 P.2d 1074, 1077 (Colo. Ct. App. 1991).  "If the parties fail to agree to sufficiently definite and certain terms, there is no meeting of the minds and, hence, no valid contract."  *Id.*  All material terms must be agreed to in order for a contract to be valid.  *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1248 (Colo. Ct. App. 2001).  As noted by the Colorado Supreme Court:

> A fundamental contractual requirement is that of certainty. The minds of the parties must have met. Where one party may have intended a certain obligation, and the other party intended a different one, and from the wording of the instrument itself there is no rule by which the true intention can be determined, no contract results. . . . . 'The court can supply some elements in a contract, but they cannot make one; and when the language in a contract is too uncertain to gather from it what the parties intended, the courts cannot enforce it.' *Ryan v. Hanna*, 89 Wash. 379, 154 P. 436.  'A court will not undertake to enforce a contract, unless by some lawful means it can ascertain and know just what the contract bound each party to do.' *Lester v. Hinkle*, 193 Ind. 605, 141 N.E. 463, 465.  'An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain.' Restatement of the Law-Contracts, p. 40, § 32.

*Id.* at 518-19.

  The issue of whether a valid arbitration agreement exists is thus governed by principles of contract law and, as noted by the Second Circuit, is not merely an "'inquiry' into 'whether the parties have, anywhere in their agreement, evidenced an intent to arbitrate certain claims.'"  *Dreyfuss v. Edelecare Global Solutions*, No. 08-5903, 2009 WL

3004111, at *2 (2nd Cir. 2009).  Thus, the party seeking to enforce an alleged arbitration agreement must show a meeting of the minds necessary for the existence of an enforceable agreement and prove the terms of the agreement.  *Id.* at *2-3.

In this case, while the parties may have broadly expressed an interest in the LOI in some type of arbitration, the arbitration language in the LOI relied on by Defendant does not contain the essential terms of an agreement to arbitrate or show a meeting of the minds regarding same.  Essential terms to an arbitration agreement have been held to include the intent to arbitrate (that the parties firmly desired to resolve all disputes without resort to litigation), the scope of the arbitration (what claims or controversies would be arbitrated), binding rules for the arbitration and the effect of the arbitration ruling (whether it is binding on the parties).  *Williams v. Alumni Assoc. of Univ. of Kansas*, No. 98,217, 2008 WL 3367599, at *3-4 (Kan. App. 2008).

Turning to the LOI at issue, the language about arbitration is silent as to whether the parties are to be bound by the arbitration, *i.e.*, whether the arbitration provision is permissive or mandatory.  As stated by the Texas Court of Appeals, while there is no particular form or language required for a valid arbitration agreement, it must reflect the parties' intent to submit their dispute to arbitrators *and* to be bound by that decision." *Montoya v. Glenny*, No. 04-08-00923-CV, 2009 WL 4981329, at *3 (Tex. App.-San Antonio 2009) (emphasis added) (citing *Porter & Clements, LLP v. Stone*, 935 S.W.2d 217, 220 (1996) (additional citation omitted)); *see also Schofield v. Int'l Dev. Group Co.*, No. SA-05-CA-1110-RF, 2006 WL 504058, at *2 (W.D. Tex. 2006).

Further, the arbitration language in the LOI is silent as to the scope of the arbitration, *i.e.*, what claims will be encompassed by the arbitration provision, and what rules will be applicable. *See Jubert v. Central Michigan Univ.*, No. 228850, 2003 WL 288948, at *2 (Mich. App. 2003) (no meeting of the minds on essential terms of arbitration agreement when there was no indication that the plaintiff would be required to submit any and all of her claims to arbitration or that such arbitration would be her exclusive remedy). The Court has no way of knowing whether the parties intended to compel arbitration in limited instances, in all disputes arising from the LOI or in some later agreement, or in all disputes arising generally between the parties.

Colorado case law relevant to contracts also supports this finding. *See DiFrancesco*, 39 P.3d at 1249-50 (no valid contract where the parties did not reach agreement on several material terms of the license, including the scope of the license or the content of the noninterference clause); *Stice v. Peterson*, 355 P.2d 948, 952 (Colo. 1960) (oral contract was unenforceable when it left all the terms and conditions in doubt; including when the obligation arose, when and how it was to be paid and the terms of payment; "[s]uch incomplete and ambiguous contracts have been condemned by this court."). Further, Section 2 of the FAA supports this finding. It states, "[a] written provision in any . . . contract evidencing a transaction. . . to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid,

irrevocable, and enforceable." 9 U.S.C. § 2.  In this case, the alleged arbitration agreement is silent as to what controversy or claims will be arbitrated.

I also note that the arbitration language in the LOI is not even an arbitration clause, merely isolated language in the LOI reflecting that the parties agree to some form of arbitration.  Further, there is nothing in the LOI that states the parties agree to arbitrate disputes that arise out of the LOI.  Instead, the LOI refers to the final license fee to be negotiated by the parties, and appears to be an agreement to include some form of arbitration provision prospectively into a final license fee agreement which was never ultimately executed.  (LOI at 2, 5-sections relevant to Term and Termination Clauses.) The arbitration language lies in stark contrast to other sections of the LOI which appear to be specific contractual clauses that are effective upon signature of the LOI.  (*See, e.g.,* LOI at 3-4-sections relevant to License Fee, Agreement Fee and Additional Rights, part 3.)  Plaintiff asserts that this was intentional, as the parties did not intend to arbitrate current disputes related to the LOI but to arbitrate future disputes when or if they agreed to a final license agreement.

As noted in the Declaration of Todd Howe in Support of Plaintiff's Response in Opposition to Defendant's Motion to Stay Pending Arbitration, the LOI was entered into in consideration of a possible licensing agreement, which included "the terms and conditions the parties intended to include in a final agreement if one was executed."  (How Decl., ¶ 7, Aug. 20, 2010, ECF No. 14-1.)  He further stated that the LOI was "not intended to be the parties' final definitive agreement, as the headings would need to be negotiated and agreed upon in the final agreement" (*id.*, ¶ 8.)  No final terms were ever reached as the

parties' relationship deteriorated and no final license fee agreement was ever executed. (*Id.*, ¶¶ 9-11.)

The fact that the parties intended the terms in the LOI, including the reference to arbitration, to be something that was further negotiated and included in a future document also makes the arbitration language in the LOI unenforceable as an agreement. Colorado case law holds that "[a]greements to agree in the future are generally unenforceable because the court cannot force parties to come to an agreement." *DiFrancesco*, 39 P.3d at 1248. Indeed, there can be no binding contract if it appears that further negotiations are required to work out important and essential terms. *Id.*

Therefore, I find that Defendant has not met its burden of showing that the arbitration language in the LOI constitutes a valid agreement to arbitrate.

    C.    <u>Analysis of the Scope of the Agreement</u>

Because the arbitration section of the LOI does not constitute a valid agreement to arbitrate, an analysis of the scope of the agreement in unnecessary.

IV.    <u>Conclusion</u>

Based on the foregoing, it is hereby

ORDERED that the Defendants' Motion to Stay Pending Arbitration filed July 30, 2010 (ECF No. 12) is **DENIED**.

Dated:  November 9, 2010

                                BY THE COURT:

                                <u>s/ Wiley Y. Daniel</u>
                                Wiley Y. Daniel
                                Chief United States District Judge